IN THE DISTRICT COURT IN AND FOR BRYAN COUNTY
STATE OF OKLAHOMA

FILED
BRYAN COUNTY, OKLAHOMA
DISTRICT COURT CLERK
AUG 01 2014
DONNA ALEXANDER
BY_____ COURT CLERK
_____ Deputy

| | |
|---|---|
| CASEY AND SHANTILLE STRAHAN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. CJ-2014-_____ |
| ) | |
| ALLSTATE INDEMNITY COMPANY, and ) | |
| MONICA BAKER AGENCY, INC. ) | |
| ) | |
| Defendants. ) | |

## PETITION

COMES NOW the Plaintiffs, Casey and Shantille Strahan, and for their causes of action against Defendants Allstate Indemnity Company and the Monica Baker Agency, Inc. alleges and states as follows:

### I. JURISDICTION AND VENUE

1. Plaintiffs Casey and Shantille Strahan, ("Strahans"), are citizens of the State of Oklahoma and residents of Bryan County, State of Oklahoma.

2. Defendant Allstate Indemnity Company, ("Allstate"), is an insurance company licensed to and engaged in the business of insurance in the State of Oklahoma, including Bryan County, Oklahoma, where it has agents.

3. Defendant Monica Baker Agency, Inc., ("Agency"), is a corporation organized under the laws of the State of Oklahoma.

4. Jurisdiction and Venue in this action are properly before this Court pursuant to 12 O.S. §§ 134 and 137.

EXHIBIT 1

## II. FACTUAL BACKGROUND

5.    The Strahans hereby adopt and reallege each of the facts and allegations set forth in paragraphs 1-4 above.

6.    During the summer of 2012, wildfires burned at least 51,000 acres in drought-stricken Oklahoma. On July 30, 2012, Oklahoma Governor Mary Fallin issued Executive Order 2012-21, declaring a state of emergency in all 77 Oklahoma counties due to the drought and wildfires.

7.    Days later, on August 3, 2012, Plaintiffs were at the home they rented in Luther, Oklahoma. Sometime that afternoon, the electricity in the house went out. Because electrical outages are common in the hot summer months, Casey Strahan believed the electricity had gone out due to a strain on the electrical grid. Eventually, however, Casey went outside to see if any of the neighbors' electricity was also out. Far off to the south, Casey saw a plume of black smoke.

8.    Across the street from the Strahan's home was the Luther Elementary School. Because school was out for the summer, Casey was surprised to see a number of cars in the parking lot. He went over to the small crowd that had gathered and with them discussed the wildfire burning several miles to the south of them, on the south side of the Turner Turnpike. The consensus was the wildfire was to the south, headed east, and would miss their location.

9.    While he was at the School, Casey received a phone call from his father, who was calling to inquire about the wildfires he had heard might be in the Luther area. Casey assured his father everyone was fine and that it looked as if the wildfire was headed east, toward Wellston, and would miss them.

10. During this conversation, Casey's father inquired as to whether Casey had renter's insurance. Casey indicated that he did not, as he believed it was only necessary in a high crime area, of which Luther was not. Casey's father then suggested that Casey get insurance, as it would also be helpful to have in the event of fire. After that call ended, Casey's father called back and gave Casey the name and number of the Monica Baker Agency, an Allstate Insurance agency in Edmond, Oklahoma, and encouraged Casey to call.

11. As Casey was standing in the parking lot of the School, he made a phone call to the Monica Baker Agency and spoke to agent Jessica Baals. Casey advised Ms. Baals that he wanted renters insurance and the two of them began filling out the insurance application over the telephone, with Casey answering the questions of Ms. Baals.

12. While Casey was on the phone with Ms. Baals, she requested that he provide her credit card information from which the premiums for the policy could be deducted. Still on the phone with Ms. Baals, Casey returned home to retrieve his credit card information, and completed the phone call with her while still at the house. At the close of the conversation, Casey asked Ms. Baals when the insurance would be effective. She advised that by his giving her his credit card information, he was immediately insured; she advised of no waiting periods or other contingencies that must occur before coverage would become effective. She further advised she would be emailing the receipt for purchase to him, along with other papers.

13. At 6:36 p.m. that evening, Casey received an email from the Monica Baker Agency entitled: "Renters policy purchase confirmation", attached hereto as Exhibit 1. Included as an attachment to that email were the documents attached hereto as Exhibit 2. Those documents confirm that Allstate bound Policy Number 1001622216407191 issued to Casey and Shantille Strahan, providing $40,000 in Personal Property Protection, effective at 5:28 p.m.

3

August 3, 2012. The documents further indicate a "transaction time/date" of 05:28 PM 08/03/2012. For the next several months, Allstate deducted the monthly premium from the Strahan's credit card.

14. Subsequent to his phone call with Ms. Baals, the Strahans were advised by local authorities to evacuate their house. Still believing the fire would miss them, the family grabbed a number of personal items and left.

15. Unfortunately, the fire was both fast-moving and unpredictable. Instead of heading east, the fire turned back to the north and to the west. When Casey returned home the following day, he found that the family's home and belongings had been completely consumed by the fire and were a total loss.

16. Several days later, Casey phoned the Monica Baker Agency and once again talked to Ms. Baals. He informed her of the fire loss and she gave him the website information for filing a claim. Subsequently, Casey received a call from Monica Baker, who advised that his claim would be handled by a claim adjuster who would be contacting him.

17. Subsequently, on August 13, 2012, Casey received a letter from Allstate adjuster, James Koloff, advising that there was no coverage for the fire loss claim because, "The Renters policy was made effective August 3, 2012 on the date of loss and had not completed the 60 day underwriting review period per the application of insurance signed on August 8, 2012." See letter, attached as Exhibit 3.

18. Frustrated and confused by the letter, Casey called Mr. Koloff at Allstate and inquired about the reason for the claim denial. Koloff told Casey the claim was denied because it was "pre-determined" at the time of his application that his house would be burned. This was the first and only time that Casey ever spoke to Mr. Koloff.

## FIRST CAUSE OF ACTION –

## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

### A.    BREACH OF CONTRACT

19.    The Strahans hereby adopt and reallege each of the facts and allegations set forth in paragraphs 1-18 above.

20.    At the time of the fire loss at the Strahan's home on August 3, 2012, the Strahans were covered by an insurance policy issued by Allstate that, *inter alia*, provided that, in the event of a loss by a covered peril, Allstate would pay the Strahans to repair or replace the lost or damaged personal property.

21.    On August 3, 2012, the Strahan's home was destroyed by a fire, (a covered peril), causing loss and/or damage to the Strahan's insured personal property.

22.    The Strahans made a claim to Allstate for payment under the policy.

23.    Allstate denied the Strahan's claim.

24.    Allstate's denial of the Strahan's claim is a breach of the insurance contract.

25.    As a direct and proximate result of Allstate's breach of the insurance contract, the Strahans have suffered damages in excess of Ten Thousand Dollars ($10,000).

### B.    BAD FAITH

26.    The Strahans hereby adopt and reallege each of the facts and allegations set forth in paragraphs 1-26 above.

27.    Allstate had and continues to have a duty to deal fairly and in good faith with its insureds, Casey and Shantille Strahan.

28.    Allstate breached its duty to deal fairly and in good faith with the Strahans by failing to conduct a full, fair and timely investigation of their claim; failing to fully and fairly

consider and evaluate the facts that were known or should have been known to Allstate with regard to the Strahan's claim; and wrongfully and unreasonably denying payment of the Strahan's claim.

29. As a result and proximate result of Allstate's breach of the duty of good faith and fair dealing, Plaintiffs suffered damages in excess of Ten Thousand Dollars ($10,000).

30. Allstate's breach of the duty of good faith and fair dealing was intentional and malicious.

31. Punitive damages should be awarded against Allstate in an amount sufficient to punish Allstate and deter others.

### SECOND CAUSE OF ACTION – PROMISSORY ESTOPPEL

32. The Strahans hereby adopt and reallege each of the facts and allegations set forth in paragraphs 1-31 above.

33. Jessica Baals is a licensed Oklahoma insurance agent and was at all times acting within the course and scope of her employment with Agency and Allstate. Baals advised Casey Strahan that he was covered by a renter's insurance policy that provided, *inter alia*, up to forty thousand dollars, ($40,000.00), in coverage for the Strahan's personal property.

34. The Strahans paid and Allstate accepted payment for premium of said policy on August 3, 2012.

35. The Strahans relied upon Baals' assertion to Casey that they were covered starting, "right then" and did not seek to obtain coverage elsewhere.

36. After a wildfire later destroyed the Strahan's home, Allstate denied the Strahan's claim, asserting that the policy Allstate/Agency sold him and Baals had said was in effect, was not, actually, in effect prior to the fire.

37.     Allstate and/or Agency should be required to pay the Strahan's loss in accordance with the terms of the policy that Baals promised and the Strahans paid for.

### THIRD CAUSE OF ACTION – NEGLIGENCE

38.     The Strahans hereby adopt and reallege each of the facts and allegations set forth in paragraphs 1-37 above.

39.     Casey Strahan contacted Agency to obtain insurance.

40.     The Strahans reasonably expected that Agency would use its professional knowledge and experience to obtain the insurance requested.

41.     Agency had the duty by the virtue of its professional knowledge and experience to obtain the insurance the Strahans requested.

42.     Agency breached its professional duty to the Strahans by failing to obtain the insurance requested.

WHEREFORE, Plaintiffs Casey and Shantille Strahan pray for judgment against Defendant Allstate Indemnity Company and/or Defendant Monica Baker Agency, Inc. for an amount in excess of Ten Thousand Dollars ($10,000.00), together with costs, interest, reasonable attorney fees, and other relief which this Court deems just and equitable.

Respectfully submitted,

*Simone Gosnell Fulmer*
Simone Gosnell Fulmer, OBA #17037
Carin Marcussen, OBA #19869
WHITTEN BURRAGE
1215 Classen Drive
Oklahoma City, OK 73103
Telephone:   (405) 516-7800
Facsimile:    (405) 516-7859

-and-

Sherman Reed, OBA #11971
SHERMAN A. REED, P.C.
1701 South Kelly Avenue
Edmond, OK 73013-3018
Telephone:   (405) 844-9900
Facsimile:    (405) 844-9958

**ATTORNEYS FOR PLAINTIFF**

**ATTORNEY LIEN CLAIMED!**
**JURY TRIAL DEMANDED!**